UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
JUL 2 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-371-GWU

DEBRA ENGLE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Engle

Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Engle

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Engle

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Engle

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Debra Engle, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of diffuse general pain syndrome and fibromyalgia, a history of left elbow tendonitis, a late onset dysthymic disorder, a moderate major depressive disorder, panic disorder without agoraphobia, and a pain disorder associated with psychological factors. (Tr. 797). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 801-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of light level exertion, and also had the following non-exertional impairments. (Tr. 824). She: (1) could sit, stand, and walk six hours each out of an

eight-hour day; (2) would require the option of sitting or standing at will; (3) would be precluded from more than occasional overhead reaching; and (4) would be limited to jobs requiring no more than simple 1-2 step instructions and jobs in which "she would not be dependent on others for her job duties." (Id.). The VE responded that there were jobs at the light level that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 825). The ALJ then presented another hypothetical question reflecting the physical restrictions from a prior final administrative decision from April 22, 1996. This hypothetical question assumed that the plaintiff would be limited to sedentary level exertion, and would also have the following non-exertional impairments. (Tr. 826). She: (1) could not climb ladders, ropes, or scaffolds, work at heights, around dangerous machinery, or be exposed to "whole body vibration;" (2) could occasionally reach overhead, climb stairs and ramps, balance, stoop, squat, bend from the waist to the floor, kneel, crouch, or crawl; (3) would require a sit/stand option at will; (4) would be precluded from more than simple grasping or repetitive motion with her upper extremities such as keyboarding or any fine manipulation with her dominant right hand, or high-speed assembly work; and (5) would be limited to "those same 1-2 step job instructions and work that would not make her dependent on others." (Id.). The VE testified that sedentary level jobs would exist for a person with the restrictions. (Id.).

Engle

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Procedurally, the plaintiff filed several applications for DIB and SSI. As previously noted, her initial applications were denied in a decision by an ALJ on April 22, 1996 (Tr. 276), and the ALJ in the present case applied res judicata through that date (Tr. 787). The plaintiff's Date Last Insured (DLI) for DIB purposes was December 31, 1998, meaning that the plaintiff needed to establish disability prior to that date in order to be entitled to DIB. Her SSI application is not affected by the DLI. As the ALJ noted, this creates two distinct time periods. For DIB, the period under consideration is April 23, 1996 through the DLI, December 31, 1998. (Tr. 787). For SSI purposes, the period is the March, 1998 filing date[1] through the date of the decision, February 24, 2004. (Id.). The ALJ, while noting that Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) makes a prior, final administrative decision binding unless there is evidence of changed circumstances, found that there had been an improvement in the plaintiff's condition since the 1996 decision. (Tr. 787, 798).

For the DIB period, although the plaintiff carried a diagnosis of fibromyalgia as well as carpal tunnel syndrome and shoulder problems from several sources

---

[1] The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date. Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

9

Engle

(e.g., Tr. 484, 488, 492-3, 513-17), there is no evidence of greater physical restrictions than given in the ALJ's second hypothetical question. The only examining source during this time to discuss restrictions was a consultative examiner, Dr. Robert Taylor, who opined in August, 1998 that she would be limited in her ability to lift greater than 10 pounds, but would have no other restrictions. (Tr. 501). State agency reviewing physician, Dr. John Rawlings, completed a physical residual functional capacity form in November, 1998, which is less restrictive than the ALJ's second hypothetical question. (Tr. 545-52). Therefore, although there is, in fact, insufficient evidence to support a finding of an improvement in the plaintiff's <u>exertional</u> level prior to December 31, 1998, any error is harmless in view of the VE's answer to the second hypothetical.

However, the plaintiff was evaluated psychologically by Dr. Robert Genthner in July, 1998, and found to have a pain disorder and a depressive disorder "secondary to lifestyle changes." (Tr. 497). Dr. Genthner opined that the plaintiff would have a "fair" ability to relate to co-workers and employers, and a limited capacity to tolerate the stress and pressure of day-to-day work activity, but did not define "fair." (Tr. 498). A state agency reviewing psychologist, Dr. Jay Athy, prepared a mental residual functional capacity form on December 2, 1998 indicating that the plaintiff would have a "moderately limited" ability to interact appropriately with the general public, to complete a normal workday and workweek without

10

Engle

interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. (Tr. 562-5). The opinions of state agency reviewing sources must be considered in accordance with 20 C.F.R. Section 404.1527(f)(2)(i). The hypothetical question did not contain these factors, and thus did not correctly represent the plaintiff's restrictions for the DIB and the beginning of the SSI period.

For the period of January 1, 1999 through the date of the decision, applicable only to the SSI period, there were several additional psychological evaluations, which reached different conclusions regarding limitations. Mr. James Leisenring, a psychologist, opined that the plaintiff would have no useful ability to deal with work stresses in addition to having other serious limitations (Tr. 712-14), and Dr. Christa Muckenhausen, a one-time examining neurologist, felt that he would be "seriously limited but not precluded" in all areas (Tr. 729-30). Treating sources at the Comprehensive Care Center, however, gave a Global Assessment of Functioning (GAF) score of 60-65 (Tr. 627, 640-2, 644, 1078), reflecting no more than "moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. The plaintiff was prescribed medications including Prozac, Zyprexa, and Remeron, but admitted that she was not taking them as directed (Tr. 1084, 1086), and eventually

11

Engle

discontinued treatment. She told Dr. Kevin Eggerman, who conducted a consultative psychiatric evaluation in July, 2002, that her case was terminated after she missed appointments because she did not want to talk about her problems. (Tr. 1160). In any case, Dr. Eggerman diagnosed a moderate generalized anxiety disorder, and concluded that the plaintiff had a "fair" ability to understand and remember moderately complex or complex instructions, relate to co-workers and supervisors, persist on tasks, and tolerate work-related stress. (Tr. 1163-4). Once again, the term "fair" was not defined. However, state agency reviewing psychologists again found "moderate" limitations in several areas, (Tr. 1179-82, 1191-4). None of the more specific mental restrictions were reflected in the hypothetical question.

The main focus of the Court's concern in the SSI period, however, concerns physical restrictions given by the plaintiff's treating family physician, Dr. Jackie Maxey, on December 30, 2002, which limited her to never lifting even 10 pounds occasionally, sitting, standing, and walking no more than five hours each in an eight-hour day "with rests," never crawling, climbing, or reaching above shoulder level, occasionally squatting and crawling, an inability to use either hand for repetitive grasping, pushing or pulling, or fine manipulation, no use of foot controls, and a total restriction on unprotected heights, and exposure to marked changes in temperature and humidity. (Tr. 1223). This would represent greater restrictions than were given

12

Engle

in the second hypothetical question and have not been properly discounted as noted infra.

Generally, the opinion of a treating source such as Dr. Maxey is entitled to controlling weight unless there are sufficient reasons to discount it. See, e.g., Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 977(6th Cir. 1987). Dr. Maxey diagnosed "chronic stigmata of fibromyalgia" and prescribed such medications as Lorcet, Soma, Neurontin, and Celebrex. (Tr. 1243). Her opinion is consistent with the opinion of the plaintiff's prior family physician, Dr. Nancy Morris, whom the plaintiff saw in 1999 and 2000. Dr. Morris noted that the plaintiff had "an extensive history of fibromyalgia" and found trigger points throughout the trapezius and neck area, as well as left lateral epicondylitis. (Tr. 567-8). On the initial visit, the plaintiff had demonstrated a reduced range of motion of the cervical spine and shoulders, which also had significant crepitus, and Dr. Morris also noted a dislocated left AC joint with extensive crepitus. Her opinion, given in September, 1999, was that the plaintiff could lift less than five pounds, stand and walk less than two hours in an eight-hour day, never climb, crouch, kneel, or crawl, occasionally balance, and had a limited ability to reach, handle, feel, push, pull, and work around heights and moving machinery. (Tr. 572-5).[2]

---

[2] Other treating sources during the second period included a pain treatment specialist, Dr. Manoochehr Mazloomdoost, who found tenderness, spasm, limited flexion, poor rotation of the neck, and a "clicking" left clavicle. (Tr. 617-18, 706). He

13

The only physical examiner during the second period to give an opinion regarding specific functional restrictions was a consultative physical examiner, Dr. Bobby J. Kidd. He found no real abnormalities on examination, other than a reduced range of motion of the shoulders "due to anticipation of pain," and concluded that the plaintiff could perform at the exertion with her only restriction being "occasional" reaching above shoulder level. However, his opinion by itself is not enough to overcome the opinion of the treating physicians who had a "longitudinal" opportunity to review the plaintiff's condition. The ALJ noted that Dr. Kidd had been given records from Dr. Morris, Dr. Gilbert, and Dr. Mazloomdoost to review, but while Dr. Kidd indicated that he had seen these records, he does not give any interpretation of them. (Tr. 721).

As the Sixth Circuit has noted, CT scans, x-rays, and minor physical abnormalities "are not highly relevant in diagnosing [fibromyalgia] or its severity" since fibromyalgia patients "manifest normal muscle strength and neurological reactions" and "standard clinical tests and observations . . . to detect neurological and orthopedic disease [are] of little aid or relevance . . . except as a means of

---

opined repeatedly that he believed that the plaintiff's pain was real, although he did not list any functional restrictions. (E.g., Tr. 698). Dr. John Gilbert, a neurosurgeon, recorded essentially normal physical examinations, and obtained a largely normal MRI of the cervical spine, but still opined that the plaintiff was "disabled" due to fibromyalgia and chronic back strain. (Tr. 673-4, 700, 1045).

14

Engle

excluding certain neurologic or orthopedic causes of . . . pain." Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988).

In short, in the particular circumstances of this case, the Court does not find substantial evidence to overcome the opinion of the treating physician, Dr. Maxey, which was not reviewed or commented upon by any other medical professional, given that her reports contain sufficient information to support a diagnosis of fibromyalgia, and that other treating sources also made such findings. However, the evidence of restrictions is not so overwhelming as to justify an award of benefits. A remand will be required in order to obtain, at a minimum, an opinion from a medical expert who has reviewed all of the evidence and opinions, and gives clear reasons that his opinion differs from Dr. Maxey. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

The decision will be remanded for further consideration.

This the __28__ day of July, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE